THE BOARD OF CHOSEN FREEHOLDERS OF ATLANTIC COUNTY v. PETER S. TILTON, COLLECTOR OF HAMMONTON.

1. The twenty-ninth section of the act incorporating the town of Hammonton, in Atlantic county, (*Pamph. Laws*, 1866, *p*. 202,) held not to be in conflict with or as repealing Sections 30, 31 and 32 of the "act to incorporate the chosen freeholders in the respective counties of the state."
2. Hammonton is properly included in levying a tax for the support of the poor in the county poor-house of that county, ordered by the board of freeholders to be assessed upon the county.

On application for peremptory *mandamus*.

Argued at November Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the relator, *A. C. Scovel.*

For the defendant, *Robert Gilchrist.*

The opinion of the court was delivered by

KNAPP, J.   Application is made on behalf of the board of chosen freeholders of the county of Atlantic, for a *mandamus* to compel the collector of the town of Hammonton, in said county, to collect a tax ordered by the board of freeholders of said county to be raised for the support of the poor in the county poor-house.

The proportion of tax ordered by the freeholders to be assessed upon the town for the year 1876, was assessed by the assessor of the town, but the collector refuses to collect the assessment.   This refusal is based upon the alleged ground that, by the provisions of the act entitled " An act to incorporate the town of Hammonton, in the township of Mullica, in the county of Atlantic," the general law providing for the support of poor-houses in the counties, by taxation upon townships in the counties, is repealed as to that town.   By the twenty-ninth section of the charter of Hammonton, (*Pamph. Laws*, 1866, *p.* 202,) it is enacted that " the legal voters may, at their annual charter election in each year, raise by a plurality of votes, such sum or sums of money as they may think proper and necessary for the support and maintenance of the poor of said town."   And by the thirty-third section of the same act, it is enacted that " from and after the passage of this act, all acts or parts of acts inconsistent with or repugnant to the provisions hereof, the same be and they are hereby repealed, so far as they might otherwise relate to the town of Hammonton hereby created."   It is claimed that the thirtieth and thirty-second sections of the act to incorporate the chosen freeholders in the respective counties in this state, (*Rev., p.* 127,) which provides for the purchase or erection of county poor-houses, and levying tax, by order of the freeholders, for their support, are inconsistent with and repugnant to the

twenty-ninth section of the charter, and are, therefore, repealed, as to that town.

It is a rule of statutory construction that where contrary laws come in question, the general law yields to the special, and that regardless of the order of time of their passage *State* v. *Clark*, 1 *Dutcher* 54 ; *State, Taintor, pros.*, v. *Morristown*, 4 *Vroom* 61. Unless, by the general law, the legislature manifests the intent to repeal the special law. *State, M. & E. R. R. Co., pros.*, v. *Commissioner of Railroad Taxation*, 9 *Vroom* 472.

A special local law that is positively repugnant to a former general law, and not either confirmative, cumulative or auxiliary to it, repeals the old law to the extent of the repugnancy. *McGavisk* ads. *State, M. & E. R. R. Co., pros.*, 5 *Vroom* 511.

This act respecting the town of Hammonton, contains a repealing clause of all inconsistent legislation. But is this legislation inconsistent with the provisions of the act giving power to the board of freeholders of the respective counties to build poor-houses and provide for their support, or is it merely a provision of law, conferring upon that town power in reference to its poor, such as is given to all the towns and townships in the state by general law, auxiliary to the relief provided in the freeholders' act?

An examination of the legislation for the support of the poor will, I think, show the latter to be the correct view.

On March 11th, 1774, the colonial legislature passed "An act for the settlement and relief of the poor." It embodied all previously existing laws on that subject, with some important additions. *Allinson's Laws, p.* 412.

By the twenty-first section, overseers of the poor in any city, town corporate, township, or precinct, with consent of the major part of the inhabitants thereof, were empowered to build, purchase, or hire and pay for, out of the moneys provided for the relief of the poor, any house or houses in such city, &c., in which to keep and relieve their poor. The thirteenth section provided for the assembling of the inhabitants in town meeting, and deciding upon the sum or sums to be

raised for the relief of the poor, and for its assessment and collection.

The first general provision for the erection and maintenance of county poor-houses, is found in the act to incorporate the chosen freeholders of the respective counties of the state, passed Februrary 13th, 1798. *Pat. Laws, p.* 265. By Sections 30, 31, and 32 of that act, power is given to the freeholders of the respective counties to build or purchase county poor-houses, and to direct, by their order, the amount of money for the cost of building and for the support of the poor, to be raised and apportioned between the townships of the county. Within a few days thereafter, (on the 21st of February, 1798,) the act incorporating the inhabitants of townships, was passed. By the eleventh section of that act, the persons qualified to vote at town meeting were empowered, at the annual or other town meeting, to vote, grant, and raise such sums of money for the maintenance and support of the poor as they or the major part of them should deem proper and necessary for the maintenance and support of the poor (and other specified purposes), and provided for raising the money by tax upon the townships. These three enactments passed into the revision of Judge Paterson, in 1800, as they were enacted, except that the thirteenth and fourteenth sections of the act of 1774, providing for raising the money for poor purposes, were omitted, provision for that purpose being found in the eleventh section of the township act. The provisions in the freeholders' act, for the erection and maintenance of county poor-houses by taxation upon the county, was not then considered inconsistent with the provisions of the poor law, permitting the hiring or purchase, by cities, towns corporate, or townships, of buildings in which to keep their poor, and paying for the same out of the poor money, nor with the provisions of the township act, empowering the inhabitants of townships to order and raise, at town meetings, money for the support of the poor. Then, as the law stood, the board of freeholders of each county had power to build poor-houses for the county, and order the cost thereof,

and the support of the poor who were kept there, to be raised by tax upon the county at large. The townships that had poor-houses were authorized to raise, by township tax, money for their support; those that had not poor-houses were authorized to hire or build them out of the moneys raised in the township for poor purposes. If the township maintained their own poor-house, the duty of support was upon them, by taxing themselves therefor, and the county tax, for the erection and support of a county poor-house, was chargeable upon all the townships, and those having township institutions were not exempt from the payment of their quota of such tax. These powers in the county and in the several townships were concurrent. But this worked a hardship upon those townships which had built houses for their poor before the county had built; and, to relieve such townships from this double taxation, a supplement to the freeholders' act was passed February 12th, 1817, (*Laws*, 1817, *p.* 24,) providing that townships which had built poor-houses, or which should thereafter build, the freeholders having first, on request of such township, refused to build a county poor-house, should be exempt from paying any part of the *cost of building* any county poor-house that should thereafter be erected. This act, amended in some material respects—among others, extending the exemption from tax to that for support of poor-houses—became the fifth section of the act entitled " An act concerning the Board of Chosen Freeholders," passed February 28th, 1820, and is now Section 42 of the freeholders' act, as revised. The twenty-first section of the act of 1774 is embodied almost unchanged in the fifteenth section of the present poor law. *Rev., p.* 838. The thirteenth section of the act of 1774, for the raising of money for the support of the poor, was, in substance, incorporated in the eleventh section of the township act of 1798, which now forms the eleventh section of the present township law, and which is almost identical with the provisions of the twenty-ninth section of the act incorporating the town of Hammonton.

The power of the chosen freeholders to build poor-houses has continued, and now remains the same as it was when originally given in 1798. The township act was passed at the same session with, but after the act incorporating the chosen freeholders, and contained a clause repealing all inconsistent legislation. The provision authorizing the townships to raise money for the support of the poor was not then deemed in conflict with the latter act, authorizing taxes to be levied for the building and support of county poor-houses. All three of these enactments have stood together, and come down through the various revisions and digests of laws for three-quarters of a century, and have been believed to be not in conflict, but in strict harmony with each other, and been regarded as conferring together cumulative and enlarged powers in relation to the support of the poor.

The county of Atlantic has a poor-house, and, under the law, all the townships in that county are, on the order of the board of freeholders, liable for taxes for its support. The town of Hammonton says it is not liable for that tax, because the legislature, in the act creating it a separate corporation, conferred upon it power to raise money for the support of the poor; and that this is legislation inconsistent with the right of the county to order levied on the newly created town taxes for the support of the county poor. It seems to me that that legislation does no more than give to Hammonton the same power conferred by the general law upon the towns and townships in the state to raise money for the support of the poor; and as that provision of the general law has never been regarded as conflicting with the right of the freeholders, I cannot see how the legislation for Hammonton is in conflict with it; nor do I perceive in it the legislative intent to relieve the town from the duty of bearing its share of the county tax with other towns and townships in the county, all of which possess the same power to raise money for themselves, conferred upon them in terms almost identical with those used by the legislature in the town charter.

To exempt the town from sharing with like municipalities

the burden of taxes imposed by general law for such public purposes, the legislative intent so to do should appear in express terms, or in the clearest implication springing from them. In this case neither is to be found ; on the contrary, the twenty-first section of the act expresses an opposite intent. It is therein enacted that all state and county tax shall be assessed and collected by the assessor and collector of said town in the like manner as township taxes are assessed and collected. To this general provision there is no exception. Taxes for the support of the county poor-house are as much county taxes as any other. Nor is this provision, empowering towns and townships to raise money for the support of the poor, a useless power, where county poor-houses exist. All the poor are not necessarily sent to the poor-house, either county or township. It has long been the practice in this state for townships, in counties where a poor-house exists, to raise money for poor purposes beside the levy, under the order of the board of freeholders. The relief of the casual poor is provided for out of such fund. Where a temporary misfortune befalls the head of a family, rendering public relief for the time necessary, it is not the policy of the law nor of humanity, to break up the household, and send its members to the poor-house, when partial and temporary relief may serve to bridge over the misfortune and preserve the home. The practice of granting such relief by the township is legal and commendable ; and the power given to Hammonton to raise money for poor purposes, will enable that town thus to minister to its casual poor. But the enactment was not intended to relieve the town from sharing the more general public burden.

A peremptory *mandamus* should issue.